# IN THE COURT OF APPEALS OF IOWA

No. 17-0124
Filed February 7, 2018

**CLINTON D. CARMICHAEL,**
Plaintiff-Appellee,

**vs.**

**STACY LYNN PHILPOTT, n/k/a STACY LYNN ANDERSON,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Taylor County, John D. Lloyd, Judge.

The mother appeals from the district court's ruling on the petition to modify, which placed physical care of the parties' minor child with the father. **AFFIRMED.**

Chad Douglas Primmer of Chad Douglas Primmer, P.C., Council Bluffs, for appellant.

David L. Jungmann of David L. Jungmann, P.C., Greenfield, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, Judge.**

Stacy Anderson (formerly known as Stacy Philpott) appeals from the district court's ruling on the petition to modify, which placed physical care of the parties' minor child with the father, Clinton Carmichael. On appeal, Stacy maintains the district court improperly considered testimony from the guardian ad litem (GAL) over her objection. She also maintains the court erred in its determination that a substantial change in circumstances warranting modification had taken place.

**I. Background Facts and Proceedings.**

These parties were never married. They have one child together, born in 2002. In 2004, a decree was entered establishing paternity, visitation, and child support and placing the child in Stacy's physical care.

In 2013, Clinton filed a petition to modify the decree. The parties ultimately reached an agreement, and in 2014, the court entered an order modifying the original decree pursuant to the parties' stipulation. In part, the parties agreed, "Each parent and the child[] shall be entitled to have telephone, internet and other contact with each other at all reasonable times." In support of this provision, Clinton agreed to pay Stacy twenty dollars per month to go toward the child's cell phone bill and neither party was to take the child's cell phone as a form of punishment without the approval of both parties. Additionally, Clinton was given visitation with the child during almost her entire summer break from school. The parties agreed the child would be "permitted and encouraged to participate in school-sponsored extracurricular activities." As a "parenting rule," the agreement also provided the parties "should refrain from . . . excessive alcohol consumption . . . while [the child] is in their care."

On May 23, 2016, Stacy filed an application to show cause, maintaining Clinton had violated a court order by drinking in the presence of the child.

Approximately one week later, Clinton also filed an application to show cause, claiming Stacy had violated a court order by refusing to allow Clinton his scheduled visitation with the child over the holiday weekend of Memorial Day and during the child's summer break. He also claimed Stacy was preventing the child from speaking to him. The same day, Clinton filed a petition to modify the decree, asking the court to place the child in his physical care. Clinton also asked the court to appoint a GAL to "make report to the court regarding the home conditions of both parties and their parenting capabilities, and other matters pertinent to the best interests of" the child.

At a combined hearing in July 2016, the court heard evidence on each party's motion to show cause and Clinton's request for a GAL to be appointed. Following the hearing, the court denied Stacy's motion to show cause, finding she had failed to establish Clinton was drinking excessively in front of the child, but granted Clinton's motion. The court found Stacy had intentionally denied Clinton's visit with the child over Memorial Day weekend and at the beginning of the child's summer break.[1] Additionally, the court appointed a GAL for the child and instructed her to conduct in-person interviews with the child and visit the home of both parents, among other things.

A pretrial conference was scheduled for August 30. Neither Stacy nor her attorney appeared at the conference. Additionally, Stacy failed to file an affidavit

---

[1] Stacy has not appealed the contempt action.

of her financial status, her child support guideline worksheet, and a certificate to show she completed the children-in-the-middle class.

A bench trial was scheduled for October 19.

On October 12, Clinton filed a motion for sanctions. In it, he noted that Stacy had been served with notice and subpoenas requiring her to personally appear with the minor child on October 11 in order to be deposed. Stacy was also to provide a number of documents, including her residential lease agreement and evidence of wages. Neither Stacy nor the child had appeared, and Stacy had not provided any of the required documents.

Following a hearing, the court issued an order finding Stacy had "knowingly and willingly failed and refused to comply with the court's order regarding discovery." The court ordered Stacy to provide the previously-requested documents within seven days and to pay the attorney fees and expenses incurred with regard to the deposition she not attended. Additionally, the court ruled that as a sanction, the GAL's "report shall be admitted into evidence at the time of trial and if necessary she may be deposed and her deposition used at trial." Trial was rescheduled for November 9.

Following the trial, the court filed a written ruling, in which the court noted that both parents had put the child in the middle of their disputes and shared adult information. While the court believed both parties needed to work on different parenting issues, it was concerned about the way Stacy and the stepfather were willing to speak to the child in front of the GAL—mocking the child for always changing her mind. Additionally, the child had reported to the GAL that when she told her mother she wanted to live with her father, Stacy threatened that the child

would be looked at as a liar in court since the child had previously signed an affidavit stating she preferred Stacy's home, intimating she would use her daughter's previous affidavit in an attempt to perjure her in court.  In its ruling, the court also concluded Stacy interferes with Clinton's relationship with the child, noting Stacy had been held in contempt twice for preventing scheduled visitation from occurring and had directed the child not to give her personal cell phone number to Clinton or to call him from her phone.  Finally, the mother had moved three times in the two years since the 2014 modification had been entered, including a move into a new school district.  In regard to the most recent move, Stacy did not tell Clinton anything about it—neither that it was taking place, nor the new location of the family's residence.

The court found that a substantial change in circumstances warranting modification had taken place and that Clinton had proved he could provide superior care to the child.  The court ordered that Clinton have physical care of the child and the parties continue to share legal custody.

Stacy appeals.

## II. Discussion.

### A. Guardian Ad Litem.

Stacy maintains the district court was in error when it allowed testimony from the GAL over her objection.  However, a review of the record reveals that Stacy did not object to the GAL's testimony.  She objected, through a motion in limine, to the court's prior ruling that the GAL's report would be admitted at trial as a sanction.  The motion in limine is silent as to whether the GAL should be allowed to testify at the proceeding.  Additionally, when the GAL was called to testify, Stacy

again "object[ed] to the admission of the report for all of the purposes set forth in my filing." As no objection was made to the GAL testifying at the trial, we do not consider this argument further.

We consider what we understand to be the rest of Stacy's claim—that the court abused its discretion when it admitted the GAL's report as a sanction. Iowa Rule of Civil Procedure 1.517 allows the court to impose sanctions when it determines a party has failed to obey an order to provide or permit discovery. "We do not reverse the district court's imposition of discovery sanctions unless there has been an abuse of discretion." *Kendall/Hunt Pub. Co. v. Rowe*, 424 N.W.2d 235, 240 (Iowa 1988). Except in cases of drastic sanctions such as dismissal or default, "[t]he district court has wide discretion in its decision of whether, or which, discovery sanction to impose." *In re Marriage of Benson*, No. 03-1388, 2005 WL 425461, at *2 (Iowa Ct. App. Feb. 24, 2005) (citing *In re Marriage of Butterfield*, 500 N.W.2d 95, 98 (Iowa Ct. App. 1993)). And generally, "there is an abuse of discretion in imposing discovery sanctions only where there is a lack of substantial evidence to support the trial court's ruling." *Wagner v. Miller*, 555 N.W.2d 246, 249 (Iowa Ct. App. 1996).

Typically, a court may enter default judgment against the offending party when the court finds, as it did here, that the noncompliance was the result of "willfulness, fault, or bad faith." *Fenton v. Webb*, 705 N.W.2d 323, 326–27 (Iowa Ct. App. 2005). But in an action for custody, the court's ultimate ruling must be governed by the child's best interests—not a sanction. *Id.* at 327. In *Fenton*, we remanded after the district court entered default judgment in a custody case, noting, "A child does not lose his or her rights because a parent fails to comply with

court rules." *Id.* We advised the district court it "should have entered evidence relating to the best interest of the child" and noted that could include the appointment of a GAL. *Id.* In this case, the court crafted the sanction so as to be provided more information about the child's wishes and interests. We cannot say the district court abused its discretion in doing so.

### B. Substantial Change in Circumstances.

The requirements to change a custodial provision are well-settled:

> To change a custodial provision . . . , the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the child[]'s best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the child[]. The party seeking to take custody from the other must prove an ability to minister more effectively to the child[]'s well being.

*In re Marriage of Downing*, 432 N.W.2d 692, 694 (Iowa Ct. App. 1988) (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). The requirements are the same for unmarried parents as they are for once-married parents. *See, e.g.*, *German v. Metcalf*, 09-1470, 2010 WL 1875640, at *1 (Iowa Ct. App. May 12, 2010); *Gragg v. Smith*, 03-1493, 2004 WL 360570, at *1 (Iowa Ct. App. Feb. 27, 2004).

Stacy maintains there has not been a substantial change in circumstances warranting modification since the entry of the 2014 modification order. We disagree. Although Stacy claims the issues with communication between her and Clinton have existed since before the 2014 modification, we believe her attempts to drive a wedge between the child and Clinton constitute a substantial change in

circumstances. *See In re Marriage of Downing*, 432 N.W.2d 692, 694 (Iowa Ct. App. 1988) (discrediting the mother's argument that the lack of cooperation between the parents existed at the time of the original decree because "the court no doubt understood certain natural animosities exist during a divorce, however it strains credulity to believe the trial court did not contemplate the parties, mature adults, overcoming these feelings to concentrate on the best interests of their daughter[]"). In the 2014 modification, the parents agreed the child would get her own cell phone and that it would not be taken away from her as punishment—unless both parents agreed—so that she was free to communicate with each parent as she wished. Since then, Stacy has forbidden the child from providing Clinton the number or calling him from the phone, even though he pays twenty dollars per month toward the bill. Additionally, since the 2014 modification, Stacy has been held in contempt twice for preventing scheduled visitation from occurring. This is a new, heightened development. Similarly, Stacy's decision not to tell Clinton that she and the child—along with the rest of her family—were moving residences is not supportive of the child and Clinton's relationship. *See Barriault v. Alden*, No. 16-0763, 2017 WL 702371, at *3–4 (Iowa Ct. App. Feb. 22, 2017) (noting that even though the father's complaints arose out of concerns that existed at the time of the original proceedings, the mother had "persisted in her campaign against" the father and her "attempts to undermine [the father's] relationship with [the child] constituted a substantial change in circumstances"). "One parent's actions which undermine the child[]'s relationship with the other parent can be the triggering event for modification." *In re Marriage of Walters*, No. 11-1746, 2012 WL 2411183, at *3 (Iowa Ct. App. June 27, 2012).

Because there has been a substantial change in circumstances since the entry of the 2014 modification,[2] we affirm.

**AFFIRMED.**

---

[2] Stacy also challenged the court's conclusion that Clinton established he can provide the child superior care. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) (noting that the parent seeking to change physical care "has a heavy burden and must show the ability to offer superior care"). We disagree.